# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| RODERICK GASTON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:21-cv-00549-MHH-NAD |
| DUSTIN T. WARD, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Roderick Gaston filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging a civil rights violation while he was incarcerated at the Limestone Correctional Facility.[1] Doc. 1. In his complaint, Plaintiff Gaston named a single Defendant: Correctional Officer Dustin T. Ward.[2] Doc. 1 at 1.

Gaston alleges an Eighth Amendment excessive force claim against Defendant Ward, and seeks money damages. Doc. 1 at 3–4. Defendant Ward filed an answer *pro se*, which was construed as a special report, and which then was construed as a motion for summary judgment. Doc. 14; Doc. 15; Doc. 18.

---

[1] Gaston since has been transferred to the Bullock Correctional Facility. Doc. 21.

[2] Because Gaston seeks only money damages, and because Defendant Ward would be immune from a claim against him in his official capacity, the court should liberally construe this claim as against Ward only in his individual capacity. *See infra* Part II.

1

Consistent with the usual practices of this court and 28 U.S.C. § 636(b)(1), this matter was referred to the undersigned for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991); N.D. Ala. Local Rule 72.1. For the reasons stated below, the undersigned recommends that the court deny Defendant Ward's summary judgment motion, because there are triable issues of fact for a jury.

## BACKGROUND

### A. Factual background

#### 1. Plaintiff Gaston's sworn allegations

Gaston alleges the following: On March 12, 2021, Defendant Ward—an officer at Limestone—gave Gaston "a direct order to lockdown." Doc. 1 at 3. Rather than comply, Gaston responded with profanity and insulted Defendant Ward. Doc. 1 at 3. Defendant Ward handed his pepper spray and radio to non-party Officer Chandler, then struck Gaston "in the face with a closed fist." Doc. 1 at 3–4. Defendant Ward then "took inmate Gaston to the concrete, and wrestled with Gaston," leaving Gaston with "bruises, scrapes and lacerations to [his] face and body, [and] with significant pain, and suffering." Doc. 1 at 4.

According to a disciplinary report that Gaston attached as an appendix to his sworn complaint, Defendant Ward charged Gaston with a disciplinary infraction, based on Gaston's refusal to comply with the direct order to lockdown. Doc. 1 at 6.

That report shows that Defendant Ward's testimony during the disciplinary hearing was consistent with Gaston's version of events (as discussed above). Doc. 1 at 6.

At the disciplinary hearing, Defendant Ward also testified that Officer Chandler had called a "Code Blue," and then "broke up the altercation and placed Gaston in handcuffs." Doc. 1 at 6.

Based on the hearing testimony, the hearing officer found that Defendant Ward had admitted fault, and consequently found Gaston not guilty. Doc. 1 at 7.

In his response to Defendant Ward's summary judgement motion, Gaston asserts that "[Gaston] was not the aggressor," and that Ward's actions violated the standards of conduct and discipline. Doc. 20 at 1–2. Gaston also points to the absence of a body chart, which could have shown the extent of his injuries, and the absence of an "assault on an officer" form, which would have been standard procedure had Gaston actually assaulted Defendant Ward. Doc. 20 at 1, 2.

### 2. Defendant Ward's factual responses

Defendant Ward disputes some of Gaston's sworn allegations. Defendant Ward avers that—after Ward ordered Gaston to lockdown, and Gaston responded with profanity and insult—Ward "gave Mr. Gaston the option to either lock down or cuff-up to which Mr. Gaston took a defensive posture as if he would strike [Ward]." Doc. 14 at 3. According to Defendant Ward, "[Ward] told Officer

3

Chandler at that time to hold [his] Radio, and Spray." Doc. 14 at 3. "Once inmate Gaston realized [Defendant Ward] was about to 'control' him through use of 'force,' inmate Gaston drew back to swing, so [Ward] immediately countered with a single punch to Mr. Gaston's face." Doc. 14 at 4.

Defendant Ward avers that, Officer Chandler then called "'code-blue,'" and that "Gaston immediately became 'non-combative' at that point." Doc. 14 at 4.

Defendant Ward also avers that "[Ward] never again struggled with or had to take inmate Gaston to the ground." Doc. 14 at 4. Defendant Ward "vehemently, and adam[a]ntly den[ies] that [he] 'took inmate Gaston to the concrete' or 'wrestled with him to the concrete.'" Doc. 14 at 4.

Defendant Ward asserts that his use of force was "'minimal,' 'justified,' and 'necessary' due to inmate Gaston's 'insubordinate, and aggressive' behavi[o]r in refusing [Ward's] 'direct official order' to 'lock down.'" Doc. 14 at 4. According to Defendant Ward, he used force in a "'good-faith' effort to maintain, and restore discipline" to "control [Ward's] 'safety,' and Officer Chandler's safety[], as well as inmate Gaston's 'safety.'" Doc. 14 at 4.

Defendant Ward also avers that there "are no documents or health care charts showing 'bruises, scrapes, or lacerations' to Mr. Gaston's body anywhere." Doc. 17 at 3.

Finally, Defendant Ward argues that he "did not express the total facts at the

4

[disciplinary] hearing" (discussed above, *see supra* Background A.1), "hoping to spare Mr. Gaston." Doc. 17 at 10.

Defendant Ward also submitted an affidavit from inmate Danny Smith. Doc. 17 at 4–5. Smith's affidavit supports Defendant Ward's version of the relevant incident. According to Smith, after Defendant Ward told Gaston to lockdown, Gaston used profanity and insulted Ward; then, Gaston was "posing like he was a boxer, and he swung at Mr. Ward." Doc. 17 at 4. Smith avers that "[a]t no time did Mr. Ward 'wrestle' with inmate Gaston," and that Gaston never was on the ground. Doc. 17 at 4.

### B. Legal background (excessive force under the Eighth Amendment)

Under the Eighth Amendment,[3] "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)) (quotation marks omitted). "What is necessary to establish an 'unnecessary and wanton infliction of pain' . . . varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley*, 475 U.S. at 320).

---

[3] *See, e.g.*, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 764 & n.12 (2010); *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (stating that, with a few exceptions, the United States Supreme Court "has held that the Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the States").

In the context of a custodial excessive force claim, "corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." *Id.* at 6 (citations omitted). And, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Id*.

For instance, the use of force generally is justified where it is "necessary to restore order." *See, e.g.*, *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *accord Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) ("In general, prison officials are authorized to use force when a prisoner repeatedly fails to obey an order . . . Officers are not required to convince every prisoner that their orders are reasonable . . . before resorting to force." (citations omitted)).

Regardless, on a custodial excessive force claim, the "core judicial inquiry" is the same: "[W]henever prison officials stand accused of using excessive physical force," the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *see also Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (similar).

The United States Supreme Court has articulated factors for "determining whether the use of force" in the custodial context "was wanton and unnecessary."

*Hudson*, 503 U.S. at 7; *see also Whitley*, 475 U.S. at 319 ("the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment").

Those factors include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Also, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Id.* (quoting *Whitley*, 475 U.S. at 321). "The extent of injury may also provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). So, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7.

In addition, the U.S. Supreme Court has instructed that "courts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the *alleged wrongdoing* was objectively 'harmful enough' to establish a constitutional violation." *Id.* at 8 (citation and quotation marks omitted; alteration in original; emphasis added). In this regard, the Supreme Court has referred to a "subjective" and "objective" component of a custodial excessive force

7

claim. *Id.* ("the subjective aspect of an Eighth Amendment claim . . . can be distinguished from the objective facet of the same claim").

On the subjective component, a court should be mindful of the prison officials' point of view based on the facts known at the time, and should "give a wide range of deference to prison officials acting to preserve discipline and security." *Sears*, 922 F.3d at 1205 (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). A court should recognize that "corrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance" (*Hudson*, 503 U.S. at 6 (citations omitted)), but that deference "does not insulate from review actions taken in bad faith or for no legitimate purpose" (*Whitley*, 475 U.S. at 322).

On the objective component, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted); *see Johnson v. Glick*, 481 F. 2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (citations and quotation marks omitted); *see*

*Wilkins*, 559 U.S. at 38 ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citations and quotation marks omitted)).

But, regardless "whether or not significant injury is evident," "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

As the Supreme Court has explained, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins*, 559 U.S. at 37. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.*

### C. Procedural background

In response to an order for special report (Doc. 7),[4] Defendant Ward filed an answer *pro se*, which was construed as a special report. Doc. 14; Doc. 15. The Alabama Department of Corrections (ADOC) already had provided notice to the court that the ADOC does not represent Defendant Ward in this matter. Doc. 10.

---

[4] This case later was reassigned to the undersigned.

9

In response to a follow-up order (Doc. 15), Defendant Ward supplemented his answer with evidence, including additional affidavits, and a "Memorandum In Support Of Motion For Summary Judgment," asserting that the court should grant judgment in his favor because Gaston cannot establish that Ward used excessive force. Doc. 17. Defendant Ward also argued that he is entitled to immunity on Gaston's excessive force claim. Doc. 17.

On November 12, 2021, the parties were notified that the court would construe the special report as a summary judgment motion, and Gaston was notified that he had 21 days to respond to the summary judgment motion by filing affidavits or other materials. Doc. 18. That November 12, 2021 order also advised Gaston of the consequences of any failure to comply with Federal Rule of Civil Procedure 56. Doc. 18; *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Gaston filed a response. Doc. 20.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.*

To avoid summary judgment, the nonmovant must go beyond the allegations to offer specific facts that create a genuine dispute for trial. *Celotex*, 477 U.S. at 324–25. The court's job is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court must construe all evidence and draw all reasonable inferences in favor of the nonmovant. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).

In addition, on a defendant's summary judgment motion, the court must consider any "specific facts" that a *pro se* plaintiff pleaded in his sworn complaint. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). The court liberally construes a *pro se* pleading. *See, e.g.*, *Jones v. Florida Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (the court should hold a *pro se* pleading to "a less stringent standard than a pleading drafted by an attorney").

Furthermore, the practical reality that a plaintiff's "evidence consists mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists." *Sears*,

922 F. 3d at 1208. And, "[e]ven if his sworn statements turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact" for trial. *Id.* at 1209. On a summary judgment motion, a court cannot make credibility determinations. *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006).

## DISCUSSION

The undersigned recommends that the court deny Defendant Ward's summary judgment motion (Doc. 14), because there are triable issues of fact on Plaintiff Gaston's excessive force claim, and because Ward is not entitled to immunity.

**I. There are triable issues on Gaston's excessive force claim against Defendant Ward.**

There are triable issues of fact on Gaston's excessive force claim against Defendant Ward. Given the genuine disputes of material fact between Gaston and Defendant Ward (discussed above, *see supra* Background A.1, A.2), the court cannot say—as a matter of law—"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

The parties do agree that Defendant Ward gave Gaston a direct command to lockdown, and that Gaston responded with profanity and insult. The parties also agree that Ward then handed his pepper spray and radio to another officer, and then punched Gaston in the face (one time). *But see* Doc. 20 at 2 (Gaston's argument that Defendant Ward was "armed with pepper spray, a precautionary measure to restrain

12

an uncooperative inmate" that "never [was] used as an option").

But the parties genuinely dispute the following material facts, among others: whether Defendant Ward punched Gaston, maliciously and/or sadistically to cause harm, or in good faith because Gaston had disobeyed an order to lockdown, responded with profanity, and insulted Ward, and/or because it appeared that Gaston was about to punch Ward (*see Hudson*, 503 U.S. at 7); whether Ward then wrestled Gaston to the ground[5]; and the extent of Gaston's injuries. On Defendant Ward's summary judgment motion, the court must construe the evidence and draw reasonable inferences in Gaston's favor. *See Centurion Air*, 420 F.3d at 1149.

Even if Gaston's allegations "turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact" for trial. *Sears*, 922 F.3d at 1209. This is "a classic swearing match, which is the stuff of which jury trials are made." *Id.* at 1208. "[W]hen it comes to arguing the merits, [a defendant] should not—may not—rely on his own factual story. Rather, he should—must—accept his opponent's story and convince [the court] that he is nonetheless entitled to prevail as a matter of law." *Patel v. Lanier Cty. Ga.*, 969 F.3d 1173, 1179 n.1 (11th Cir. 2020).

---

[5] In his response, Gaston asserts that Ward and/or other prison officials violated multiple prison regulations. *See* Doc. 20. But, without more, a violation of state policies or ADOC procedures does not violate the Eighth Amendment. *See, e.g.*, *Sandin v. Conner*, 51 U.S. 472, 481–82 (1995) (stating that prison regulations are "primarily designed to guide corrections officers in the administration of the prison," and "such regulations [are] not designed to confer rights upon inmates").

13

Moreover, at this stage (and given the parties' conflicting versions of the relevant incident), the court cannot assess the credibility of the parties; that would be for a jury. *See, e.g.*, *Miller*, 458 F.3d at 1256 (even if the court "believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices" (citations omitted)); *see also Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("when conflicts arise between the facts evidenced by the parties," the court must "credit the nonmoving party's version" (emphasis omitted)). As in *Sears*, "We do not know what the true facts are, but we do know that a genuine dispute of material fact exists." 922 F.3d at 1209.

## II. Defendant Ward is not entitled to immunity.

Defendant Ward is not entitled to immunity on Gaston's excessive force claim—not absolute immunity, qualified immunity, immunity under any "good-faith exception doctrine," or state agent immunity, *see, e.g.*, Doc. 14 at 2.

With respect to absolute immunity, Defendant Ward is correct that the Eleventh Amendment bars claims for money damages against officials and employees of state entities in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 100–02 (1984) (the Eleventh Amendment bars a § 1983 claim against a state or an agency of the state); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an official capacity claim is, in all respects other than

14

name, treated as a claim against the entity of which the officer is an agent). But, liberally construed, Gaston alleges an excessive force claim for money damages against Defendant Ward in his individual capacity, as to which Ward is not immune.

With respect to qualified immunity, the Eleventh Circuit holds that the use of force "maliciously and sadistically to cause harm" is a clearly established violation of the Eighth Amendment. *See Pullen v. Osceola Cty.*, 861 F. App'x 284, 290 (11th Cir. 2021) ("There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." (quoting *Skrtich v. Thorton*, 280 F.3d 1295, 1302 (11th Cir. 2002)). Whether Defendant Ward punched Gaston "maliciously and sadistically to cause harm," *see id.*—or in a good faith effort to preserve and/or restore order, *see Bennett*, 898 F.2d at 1533—should be a question for a jury, so qualified immunity does not apply.

On any "good faith" exception, Defendant Ward has not provided any legal authority that would support such immunity against an Eighth Amendment claim. To the extent that Defendant Ward asserts that he punched Ward "in a good-faith effort to maintain or restore discipline" (*Hudson*, 503 U.S. at 7), that question should be for a jury.

Likewise, Defendant Ward has not provided any legal authority that would support any state agent immunity against an Eighth Amendment claim. In certain circumstances, state agent immunity can serve as a defense to state law claims; that

doctrine "provides immunity from civil liability in a number of circumstances including when a state agent is '[e]xercising judgment in the enforcement of the criminal laws of the state, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons.'" *Lambert v. Herrington*, 2022 U.S. App. LEXIS 17939, at *22 (11th Cir. June 29, 2022) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)). But, because Gaston has not alleged any state law claims, state agent immunity does not apply here.

## RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the court **DENY** Defendant Ward's summary judgment motion (Doc. 14), because there are triable issues.[6]

## NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days**. The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation

---

[6] To the extent that Plaintiff Gaston's response could be construed to include a cross-motion for summary judgment, that cross-motion should be denied for the same reasons. *See* Doc. 20 at 1 ("The Plaintiff moves for summary judgment . . . .").

has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings of fact and recommendations. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

**DONE** this July 21, 2022.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE